# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CHEP USA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>STEVE'S PALLETS & LABOR, INC.<br><br>　　　　Defendant. | Case No.: 23-cv-00977 |

## VERIFIED COMPLAINT

Plaintiff CHEP USA ("CHEP"), through its undersigned counsel, states as follows for its complaint against Defendant Steve's Pallets & Labor, Inc. ("Defendant").

## NATURE OF THE LAWSUIT

1. Defendant is engaged in conduct inconsistent with CHEP's ownership rights in CHEP's property (*i.e.*, the CHEP pallets) through Defendant's unlawful and unauthorized possession, retention, use, sale, and disposition of CHEP's property, as detailed herein.

2. CHEP brings this action to obtain relief due to Defendant's conduct and a judicial declaration for return of CHEP's property.

## PARTIES

3. Plaintiff CHEP USA is a New York general partnership with its principal place of business at 5897 Windward Parkway, Alpharetta, Georgia 30005. CHEP USA has two partners, Brambles North America Incorporated and Brambles Industries, LLC.

Brambles North America Incorporated is a Delaware corporation with its principal place of business in Alpharetta, Georgia. Brambles Industries, LLC is a Delaware limited liability company with its principal place of business in Alpharetta, Georgia. Brambles North America Incorporation is the sole member of Brambles Industries, LLC.

4. Upon information and belief, Defendant is a North Carolina corporation with its principal place of business at 6900 River Hills Drive, Harrisburg, Cabarrus County, NC 28075. Defendant's registered agent and president is Joseph R. Kinard, who may be served at 6900 River Hills Drive, Harrisburg, NC 28075.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because CHEP and its partners do not share a state of citizenship with Defendant and the amount in controversy exceeds $75,000, exclusive of interest and costs, since this action seeks a writ of replevin and declaratory judgment regarding CHEP's property (*i.e.*, the CHEP pallets) in excess of $75,000.

6. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because Defendant is located in Cabarrus County, NC, does business in Cabarrus County, NC, and the events or omissions giving rise to CHEP's claims against Defendant occurred in this district.

7. All conditions precedent to bringing this civil action have been performed or have occurred.

## FACTUAL BACKGROUND

### Pallets and Commerce

8.  Typically, as goods move in commerce from their manufacturers, to distributors, to wholesalers, and finally to retailers, where they are made available for purchase by the average consumer, wooden pallets are used for purposes of hauling, loading and unloading, and storing the goods.

9.  In general, the majority of pallets circulating in the United States are common white pine pallets that come in varying shapes, sizes, and level of quality and bear no trademarks or names. These pallets, bearing no coloring or demarcation, are often called white wood pallets.

10. In general, these common white wood pallets are ***bought*** by manufacturers who place their product on these wooden platforms. The manufacturers then sell their product, along with the white wood pallet, to their distributors. The distributors then re-use these white wood pallets and sell the excess to pallet dealers or recyclers, who may repair the pallets and resell them to those in need of pallets, mulch the pallets, or otherwise dispose of them.

11. The strength of a pallet is crucial to its usefulness. Pallets that are not adequately inspected and maintained are prone to break because of the constant handling by manufacturers, distributors, and retailers. Such breakage often results in damage to the goods being transported and, at times, injuries to the individuals working with or around the pallet.

## CHEP Pallets

12. CHEP offers a better option for the pallet needs of manufacturers and/or distributors of products and goods.

13. Instead of purchasing new or recycled pallets for each shipment, manufacturers can lease pallets from CHEP as part of a national pallet pool. CHEP, which operates out of over 150 CHEP service centers across the United States, leases its pallets pursuant to its form pallet rental agreement.

14. Through CHEP's national pallet pool, manufacturers receive and ship products on uniform, high quality pallets owned and maintained by CHEP and, after inspection and repair (if necessary), these pallets are used over and over again by the manufacturers to ship their products.

15. CHEP has invested significant resources, in time and money, in maintaining superior, reliable, and safe pallets.

16. The CHEP pallet pool rental system involves the shared use of high-quality pallets by multiple customers or users. Although there are variations, the following is a general explanation of how the system works: CHEP leases its pallets to manufacturers who use the CHEP pallets as a platform for the transportation of goods to their distributors. The distributors in turn use the CHEP pallets within their distribution system until the original manufacturer's product is emptied from the pallet. The empty pallets are then set aside for return to or collection by CHEP. At CHEP service centers across the country, the empty CHEP pallets are inspected, cleaned, repaired and/or repainted (if necessary) and then sent back to manufacturers to repeat the cycle again.

17. CHEP's unique system, where high-quality pallets are constantly maintained, controlled, tracked, and reused, benefits the entire supply chain. Manufacturers receive consistent, high-quality pallets, reduced pallet expense, reduced transportation costs, and reduced product damage. Distributors and retailers benefit from faster loading and unloading, reduced product damage, and reduced pallet expense.

18. Importantly, the consistent high quality of CHEP's pallets significantly reduces the number of accidents caused by faulty or damaged pallets. Safety is improved at all levels from the manufacturer's plant to the distribution center to the retail store.

19. CHEP's system also removes costs and environmental burdens associated with waste disposal. CHEP estimates that its pallet program saves more than two million tons of solid waste each year. CHEP pallet materials that are no longer usable are mostly recycled into mulch for uses such as animal bedding and industrial sweeping compounds.

20. Given these benefits, it is not surprising that CHEP's pallet pool has been popular with manufacturers and distributors. CHEP continues to invest tens of millions of dollars a year to maintain and supplement its pallet pool.

21. ***CHEP never sells its pallets***. The success—indeed the existence—of CHEP's pallet pool rests on the fundamental principle that ***CHEP maintains ownership over all of its pallets***, which permits CHEP to inspect its pallets regularly to ensure that they continue to meet CHEP's high and consistent quality and strength standards.

22. CHEP's agreements with manufacturers and distributors *expressly* provide that ***CHEP owns the CHEP pallets and that the CHEP pallets may never be bought and sold***. All CHEP pallets are painted blue on their sides, are inscribed with CHEP's logo,

and bear the words "PROPERTY OF CHEP." Many CHEP pallets also bear the company's toll-free telephone number.

23. Pursuant to its rental agreements, CHEP always retains absolute ownership of all of its pallets.

24. The leasing process begins with CHEP entering into an agreement with a manufacturer of goods in need of pallets.

25. In order to retain control and dominion over its pallets, CHEP also enters into pallet retention and return agreements with downstream commercial entities, such as distributors. Before a lessee can ship its product on a CHEP pallet to a downstream entity, the lessee must first obtain approval from CHEP or must know that the downstream entity is already a customer of CHEP.

26. CHEP typically charges its lessees a pallet rental fee on each CHEP pallet within the lessee's possession. In this manner, CHEP has created a "leasing pool" of CHEP pallets, and it typically falls on the secondary customer, not the lessee, to return CHEP pallets to CHEP.

27. CHEP makes a concerted effort to track the flow of its pallets. A large number of CHEP's employees are dedicated in whole or in part to the protection, recovery, and retrieval of pallets, including logistics managers and coordinators, asset recovery managers and representatives, and office-based analysts and administrative personnel.

28. In particularly egregious cases (such as this one), CHEP pursues legal action, both in cooperation with governmental enforcement authorities and independently, to protect, recover and retrieve its pallets.

29. In visiting an entity with which it does not have a contractual relationship, such as a recycler, CHEP will make overtures to that entity to consider entering into an agreement with CHEP.

30. Inevitably and unfortunately, CHEP is unable to recover all of its pallets.

31. The approximate cost to manufacture each CHEP pallet is currently $35.00.

**Defendant's Wrongful Possession of CHEP Pallets**

32. Defendant does not have any contractual or other business relationship with CHEP and should never be in possession of any CHEP pallets.

33. Based on CHEP's observations and communications with Defendant, CHEP is informed and believes that Defendant uses, sells, and otherwise disposes of CHEP's pallets. The allegations below outline just some of Defendant's activities.

34. Upon information and belief, Defendant is in the manufacturing and lumber business and is a pallet recycler and dealer. Defendant handles a significant volume of pallets through the operation of at least one facility located at 5740 Pharr Mill Road, Harrisburg, NC 28075. Defendant does not make an effort to avoid collecting CHEP pallets and, upon information and belief, actively collects and purchases CHEP pallets which it thereafter sells to its customers.

35. In an effort to recover the CHEP pallets held by Defendant, CHEP representatives visited Defendant's facility in Harrisburg on multiple occasions.

36. In July 2022, CHEP's Asset Recovery Representative, Hunter Phillips, visited Defendant's premises and observed approximately 400 CHEP pallets stacked throughout the site. Phillips spoke with Bo Kinard, co-owner of Defendant, about

collecting the CHEP pallets located at Defendant's facility. Bo Kinard stated that he would call later to discuss the pallets, but he did not call CHEP.

37. Phillips visited Defendant again on or about July 26, 2022 and again spoke with Bo Kinard about collecting the CHEP pallets.

38. During the July 26, 2022 visit, Bo Kinard stated that Defendant had purchased CHEP pallets from other sellers and locations and, therefore, would not just give CHEP the pallets without financial compensation.

39. CHEP informed Defendant that the CHEP pallets could not be bought or sold, and were CHEP's sole and exclusive property.

40. Nonetheless, in an effort to resolve this matter, CHEP asked Defendant to state for what amount Defendant would allow CHEP to collect the pallets. Defendant's monetary demand was unacceptable to CHEP.

41. Defendant then offered to store the CHEP pallets for a monthly storage fee in exchange for a lower collection cost. This too was unacceptable to CHEP.

42. After CHEP declined to pay Defendant for CHEP to purchase its own CHEP pallets or to store the CHEP pallets, Defendant refused to return the CHEP pallets.

43. CHEP has notified Defendant on numerous occasions regarding CHEP's ownership rights with respect to the CHEP pallets and that any actions to buy, sell, use, dismantle, destroy, etc. such CHEP pallets violates CHEP's ownership rights.

44. To date, Defendant has not returned the CHEP pallets.

45. Upon information and belief, as of the date of this Complaint, Defendant is in possession of hundreds of CHEP pallets. True and correct copies of the photographs of

8

the CHEP pallets observed at Defendant's premises are attached hereto as **Exhibit 1** and incorporated herein for all purposes.

46. Defendant's continuing failure to turn over the CHEP pallets has deprived CHEP of the lease proceeds from leasing the CHEP pallets at issue.

## COUNT I – REPLEVIN / CLAIM AND DELIVERY

47. CHEP incorporates by reference all preceding allegations, as if set forth fully herein.

48. CHEP's property includes all of the CHEP pallets located at Defendant's business operations facilities, specifically those at 5740 Pharr Mill Road, Harrisburg, NC 28075. CHEP seeks to repossess the CHEP pallets located at this location and at any other location in Defendant's possession, custody, or control.

49. CHEP is entitled to possession of the CHEP pallets ("CHEP pallets" or "Property") as it is the true and exclusive owner of the CHEP pallets.

50. Under North Carolina law, title and right of possession of the Property was at all times, and remains, with CHEP.

51. Despite demand, Defendant has refused to allow CHEP possession of its Property.

52. To CHEP's best knowledge, information and belief, Defendant is retaining possession of the Property because Defendant believes that it is entitled to ownership of the Property.

53. The CHEP pallets have not been taken for any tax, assessment, or fine pursuant to law. The CHEP pallets have not been taken under an execution or attachment against CHEP's property.

54. Pursuant to Rule 64 of the Federal Rules of Civil Procedure and N.C.G.S. § 1-472 *et seq.*, CHEP is lawfully entitled to immediate possession of its Property.

55. Based on the foregoing, CHEP seeks to replevy its Property.

56. CHEP claims the value of its Property not delivered to the officer by virtue of the enforcement of a writ of replevin.

**COUNT II – DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

57. CHEP incorporates by reference all preceding allegations, as if set forth fully herein.

58. This is a claim for declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq.*

59. CHEP avers that the CHEP pallets are owned by CHEP, that the CHEP pallets are solely and exclusively CHEP's property, and that Defendant does not have any ownership or other rights to the CHEP pallets.

60. In contrast, Defendant takes the position that Defendant owns and/or has the right to possess or exercise ownership over the CHEP pallets.

61. Accordingly, there is an actual, bona fide, justiciable and continuing controversy between CHEP and the Defendant regarding their respective rights and obligations arising out of the main action.

62. A declaration of rights and duties as to the responsibilities of CHEP and Defendant is appropriate at this time in order for the parties to ascertain their rights and duties with respect to the CHEP pallets.

63. No adequate remedy exists at law other than that prayed for herein.

64. In light of the foregoing, CHEP is entitled to the declaratory relief sought herein because, *inter alia*, (i) there is a present and actual controversy based upon the facts alleged above; (ii) CHEP's rights are dependent upon the facts alleged above; (iii) Defendant has an actual, present, adverse, and antagonistic interest in this matter; (iv) all antagonistic and adverse interests are before the Court by proper process; and (v) the issues raised by CHEP are not propounded from curiosity and the relief sought is not merely the rendering of legal advice or an advisory opinion by the Court; there is a bona fide need for a declaration based on present, ascertainable facts.

65. CHEP has suffered and/or faced an actual or imminent injury in fact that is traceable to Defendant's wrongful conduct, which is likely to be redressed by a favorable decision, and absent the issuance of declaratory relief, CHEP will be irreparably injured.

66. Pursuant to 28 U.S.C. § 2201(a) and 2202, CHEP is entitled to a judgment declaring that CHEP has sole and exclusive ownership over the CHEP pallets and awarding CHEP such other relief, including permanent injunctive relief, as the Court deems just and proper.

## COUNT III – CONVERSION

67. CHEP incorporates by reference all preceding allegations, as if set forth fully herein.

68. CHEP has sole and exclusive ownership rights in and to the Property.

69. Defendant has in its possession hundreds of CHEP pallets that belong to CHEP. CHEP did not consent to Defendant's possession or retention of the CHEP pallets, and Defendant does not have lawful justification to possess the CHEP pallets.

70. CHEP notified Defendant that Defendant lacks ownership rights in or the right to possess the CHEP pallets, and CHEP demanded return of the CHEP pallets.

71. Despite CHEP's demand for return of its Property, Defendant has refused to surrender possession of the Property and continues to exercise possession and control over the Property.

72. Defendant is depriving CHEP of its rights in, and the use and possession of, CHEP's Property without CHEP's consent and without lawful justification. Defendant's possession and control of the Property is inconsistent with CHEP's sole and exclusive ownership of the Property.

73. CHEP has been damaged by Defendant's unlawful conversion and possession of the Property and, therefore, has an immediate right to possession of the Property at all times.

74. CHEP claims the value of the CHEP pallets not delivered to the officer by virtue of the enforcement of a writ of replevin.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff CHEP USA respectfully requests that the Court enter a judgment in its favor and against Defendant Steve's Pallet & Labor, Inc. as follows:

(1) Pursuant to Count I, that the Court enter an order issuing a Writ of Replevin and/or Order of Seizure in Claim and Delivery as to CHEP's pallets granting CHEP (i) immediate possession of the CHEP pallets, (ii) the value of the CHEP pallets not recovered, and (iii) damages for Defendant's unlawful retention of the CHEP pallets, including CHEP's costs to recover the CHEP pallets;

(2) Pursuant to Count II, that the Court enter judgment declaring that (i) CHEP has sole and exclusive ownership over the CHEP pallets, (ii) Defendant does not have any ownership or other rights to the CHEP pallets, (iii) Defendant immediately surrender the CHEP pallets to CHEP, and (iv) awarding CHEP such other relief, including any supplemental relief, including injunctive relief, pursuant to 28 U.S.C. § 2201, as the Court deems just and proper;

(3) Pursuant to Count III, that the Court enter an order (i) mandating that Defendant return to CHEP any of the CHEP pallets currently in Defendant's possession, and (ii) awarding CHEP the amount of its damages suffered, plus interest arising therefrom;

(4) That the Court enter a permanent injunction prohibiting Defendant from selling, using, or transferring CHEP pallets without CHEP's permission and requiring that such CHEP pallets be turned over the CHEP;

(5) An order awarding CHEP its costs and reasonable attorneys fees under any applicable statute;

(6) A jury trial on all issues so triable; and

(7) Any other or further relief the Court deems equitable, just, and proper.

## DEMAND FOR JURY TRIAL

CHEP, USA demands a jury trial on all issues so triable by law.

Dated: November 14, 2023

Respectfully submitted,

*/s/ Jasmine M. Pitt*
Jasmine M. Pitt, Esquire
N.C. State Bar No. 49469
AKERMAN LLP
100 North Main St., Ste. 2425
Winston-Salem, NC 27101
Phone: (336) 296-7100
Fax: (336) 296-7010
Email: jasmine.pitt@akerman.com

Samuel A. Miller, Esquire
AKERMAN LLP
420 South Orange Avenue, Ste. 1200
Orlando, FL 32801
Phone: (407) 423-4000
Fax: (407) 843-6610
E-mail: samual.miller@akerman.com
*Motion for Pro Hac to be Filed*

*Counsel for Plaintiff CHEP USA*

## VERIFICATION

STATE OF Arizona )
) ss:
COUNTY OF Maricopa )

Before me, the undersigned authority, personally appeared Mario Birs, who being duly sworn deposes and says:

1. My name is Mario Birsa, and I am the Senior Manager Asset Protection, North America of CHEP USA ("CHEP"), the Plaintiff in the above-captioned action. I am over the age of twenty-one (21) and am competent to make this Affidavit and have personal knowledge of the facts set forth herein.

2. I have read the Verified Complaint filed herein and know the contents thereof; and that the factual allegations of this Verified Complaint are true of my own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true and correct.

**FURTHER, AFFIANT SAYETH NAUGHT.**

_____,
as Senior Manager Asset Protection, North America
for Plaintiff CHEP USA

STATE OF Arizona )
) ss:
COUNTY OF Maricopa )

The foregoing instrument was sworn to and subscribed before me by means of ☒ physical presence or ☐ online notarization this 8th day of November, 2023, by Mario Birsa as _____ of Plaintiff CHEP USA, who is:
☐ personally known to me; or
☒ produced a driver's license issued by the Arizona Department of Highway Safety and Motor Vehicles as identification; or
☐ produced the following identification: _____

NOTARY PUBLIC, STATE OF ~~FLORIDA~~ Arizona
_____
(Print, Type or Stamp Commissioned Name of Notary Public)



WILLIAM LEWANDOWSKI
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 630735
Expires June 22, 2026

14